Filed 6/2/25  P. v. Robles CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>RICARDO ROBLES,<br><br>    Defendant and Appellant. | G063262<br><br>(Super. Ct. No. 97CF0592)<br><br>O P I N I O N |

Appeal from a postjudgment order of the Superior Court of Orange County, Gassia Apkarian, Judge. Reversed and remanded with directions.

Sally Patrone, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Eric A. Swenson and Heather M. Clark, Deputy Attorneys General, for Plaintiff and Respondent.

Ricardo Robles appeals from the trial court's order denying his motion to vacate his convictions pursuant to Penal Code section 1473.7.[1] The Attorney General concedes Robles did not understand his plea's immigration consequences. Exercising our independent review, we conclude Robles' error was prejudicial. We reverse with directions for the court to grant the motion.

FACTS

In 1997, Robles pleaded guilty to a felony violation of section 288, subdivision (a) (lewd act upon a child) and a felony violation of section 261.5, subdivision (d) (unlawful sexual intercourse with a minor). Robles, 26 years old at the time, admitted to having engaged in sexual intercourse with a 12-year-old girl over a three-month period. He was facing a maximum sentence of eight years in prison but accepted a negotiated plea in which he served 90 days in jail. At the advice of his attorney, he accepted the plea to avoid receiving a maximum sentence.

In 2023, pursuant to section 1473.7, Robles filed a motion to vacate his conviction. The motion included declarations from himself and his immigration attorney, Fabian C. Serrato, as well as letters of support from his mother and half-brother. In his declaration, Robles explained he came to the United States in 1995 when he was 24 years old. His mother, half-brother, and grandfather resided in the United States, and he has maintained employment since arriving. Robles was expecting a child at the time of the plea whom he began to reside with, as well as the mother, after he was released from custody. Robles attested he "would never have entered a guilty plea to the charge against [him]" had he known that he "would never be able to apply for some form of relief from deportation . . . ." The attorney

[1] All further statutory references are to the Penal Code.

who represented him at the plea "did not discuss with [him] the possibility of facing any immigration consequences if [he] entered a guilty plea" nor did his attorney "ask[] about [his] immigration status." His attorney also did not inform him of any "option to plead guilty to alternative charges."

After a short hearing at which the court took no evidence, the court denied the motion.[2]

## DISCUSSION

"In section 1473.7, the Legislature has expressed its particular concern for immigrants who suffer convictions without understanding that it will in the future result in their deportation or other adverse immigration consequences." (*People v. Alatorre* (2021) 70 Cal.App.5th 747, 765.) The Legislature has directed us to interpret the statute "'in the interests of justice and consistent with the findings and declarations' recognizing that "'[t]he immigration consequences of criminal convictions have a particularly strong impact in California.'" (*People v. Villalba* (2023) 89 Cal.App.5th 659, 665.) We must honor "the remedial goal of the new law" (*People v. Ruiz* (2020) 49 Cal.App.5th 1061, 1070) and "the broader context of the Legislature's implied and explicit intent regarding the treatment of noncitizen criminal defendants" (*People v. Mejia* (2019) 36 Cal.App.5th 859, 874 (*Mejia*)).

Section 1473.7 entitles a defendant to ask a court to vacate a conviction which is "legally invalid due to prejudicial error [which] damage[ed] the [defendant's] ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a conviction or sentence." (§ 1473.7, subd. (a)(1).)

---

[2] We need not address Robles' challenges to the hearing or the adequacy of the court's findings.

This is a two-step process.

"The defendant must first show that he did not meaningfully understand the immigration consequences of his plea." (*People v. Espinoza* (2023) 14 Cal.5th 311, 319 (*Espinoza*).) We accept the Attorney General's oral argument concession that Robles did not understand his conviction rendered him subject to mandatory deportation.

We move to the second step to see whether Robles has shown "his misunderstanding constituted prejudicial error." (*Espinoza, supra*, 14 Cal.5th at p. 319.) This requires him to demonstrate "'a reasonable probability that [he] would have rejected the plea if [he] had correctly understood its actual or potential immigration consequences.'" (*Ibid.*)

In evaluating prejudicial error, we "must 'consider the totality of the circumstances.'" (*Espinoza, supra*, 14 Cal.5th at p. 320.) "'Factors particularly relevant to this inquiry include the defendant's ties to the United States, the importance the defendant placed on avoiding deportation, the defendant's priorities in seeking a plea bargain, and whether the defendant had reason to believe an immigration-neutral negotiated disposition was possible.'" (*Ibid.*) "Also relevant are the defendant's probability of obtaining a more favorable outcome if he had rejected the plea, as well as the difference between the bargained-for term and the likely term if he were convicted at trial." (*Ibid.*)

"These factors are not exhaustive" and "we weigh all relevant circumstances, with no single factor being dispositive in our consideration of the totality." (*Espinoza, supra*, 14 Cal.5th at p. 321.) "[N]o single type of evidence is a prerequisite to relief" and we may consider a wide array of "[o]bjective evidence," including "facts provided by declarations . . . ." (*Ibid.*)

4

"Because the trial court here conducted no evidentiary hearing, there is no basis for deference, and 'it is for the appellate court to decide, based on its independent judgment, whether the facts establish prejudice under section 1473.7.'" (*Espinoza, supra*, 14 Cal.5th at p. 320.)

Here, our review of the totality of the circumstances shows a reasonable probability Robles would have rejected the plea if he had correctly understood its immigration consequences.

First, we find Robles had meaningful ties to the United States. While he immigrated as an adult, he came here to join his mother, half-brother, and grandfather in California. At the time of his plea he was employed, living with and assisting his grandfather, and expecting his first child. While the Attorney General notes a lack of corroborating evidence, "a defendant's declaration is one form of objective evidence relevant to a prejudicial error inquiry." (*Espinoza*, *supra*, 14 Cal.5th at p. 322.)

Next, Robles' plea suggests a reasonable possibility of an immigration-neutral disposition or a favorable result at trial. The prosecution did not put all its eggs in the section 288, subdivision (a) basket. It also charged Robles with a far less serious violation of section 261.5, subdivision (d)—an offense with no immigration consequences. (*Pelayo-Garcia v. Holder* (9th Cir. 2009) 589 F.3d 1010, 1011–1012.) A marked disparity exists between the seriousness of charges based on sexual intercourse with a 12-year-old girl and the leniency of a 90-day deal. That the prosecution would accept such a light sentence leaves us to question the likelihood of a conviction.

Like the *Espinoza* court, we place little weight on the absence of evidence showing any "contemporaneous confusion" about immigration consequences or Robles' desire at the time of his plea to avoid deportation.

5

(See *Espinoza, supra*, 14 Cal.5th at p. 324.) Robles did not even discover his plea had any immigration consequences until many years later, when he began to pursue legal residency as the parent of a United States Marine. He was "not required to provide the declaration of plea counsel" or "to submit contemporaneous documentation from the time of the plea." (*Id.* at p. 325.) "[N]o specific kind of evidence is a prerequisite to relief." (*Ibid.*)

As our independent review of the totality of the circumstances reveals a reasonable probability Robles would have rejected the plea if he had correctly understood its immigration consequences, "'[t]he appropriate remedy is to direct the trial court to grant the motion.'" (*Mejia, supra*, 36 Cal.App.5th at p. 873.)

DISPOSITION

The order denying Robles' motion is reversed. The matter is remanded with directions to vacate that order and enter a new order granting the motion.

SCOTT, J.

WE CONCUR:

O'LEARY, P. J.

MOTOIKE, J.

6